UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
ASHEVILLE DIVISION
1:25-cv-00438-KDB

| ALAN PATRICK HALL, | ) | |
|---|---|---|
| Plaintiff, | ) ) ) | |
| vs. | ) ) ) ) | **MEMORANDUM OF DECISION AND ORDER ON INITIAL REVIEW** |
| LOWELL GRIFFIN, | ) ) ) | |
| Defendant. | ) ) | |

**THIS MATTER** is before the Court on initial review of Plaintiff's Complaint, [Doc. 1], filed under 42 U.S.C. § 1983. See 28 U.S.C. §§ 1915(e) and 1915A. Plaintiff is proceeding in forma pauperis. [Docs. 2, 5].

### I. BACKGROUND

Pro se Plaintiff Alan Patrick Hall ("Plaintiff") is currently detained at the Henderson County Detention Center (the "Jail") in Hendersonville, North Carolina. He filed this action on December 15, 2025, pursuant to 42 U.S.C. § 1983, naming Lowell Griffin, identified as the Sheriff of Henderson County, as the sole Defendant. [Doc. 1]. Plaintiff does not allege the capacity in which he sues Defendant Griffin. [Id.]. Plaintiff alleges as follows.

On October 21, 2025, Plaintiff was detained by the Henderson County Sheriff's Office. [Id. at 3]. At some time before his detainment, Plaintiff voluntarily sought treatment for opiate dependency at two different facilities. [Id. at 3]. He was diagnosed with Opioid Use Disorder ("OUD") and subsequently prescribed a Medication Assisted Treatment ("MAT") regimen of suboxone. [Id. at 3-4]. MAT programs are "the accepted standard of treatment for OUD," which is a recognized disability under the Americans with Disabilities Act ("ADA"). [Id. at 3].

Defendant Griffin refuses to offer MAT programs for detainees at the Jail. As a result of the denial of MAT, Plaintiff has suffered acute withdrawal from his legally prescribed medications, including insomnia, diarrhea, depression, chills, and mental torment. [Id. at 4].

Plaintiff claims that Defendant Griffin has violated his rights under the ADA, the Eighth Amendment, and the Fourteenth Amendment's due process and equal protection clauses.[1] Plaintiff seeks accommodation for his OUD and transfer to a facility that offers MAT programs. [Id.].

## II. STANDARD OF REVIEW

Because Plaintiff is proceeding in forma pauperis, the Court must review the Complaint to determine whether it is subject to dismissal on the grounds that it is "frivolous or malicious [or] fails to state a claim on which relief may be granted." 28 U.S.C. § 1915(e)(2). Furthermore, under § 1915A the Court must conduct an initial review and identify and dismiss the complaint, or any portion of the complaint, if it is frivolous, malicious, or fails to state a claim upon which relief may be granted; or seeks monetary relief from a defendant who is immune to such relief.

In its frivolity review, this Court must determine whether the Complaint raises an indisputably meritless legal theory or is founded upon clearly baseless factual contentions, such as fantastic or delusional scenarios. Neitzke v. Williams, 490 U.S. 319, 327-28 (1989). Furthermore, a pro se complaint must be construed liberally. Haines v. Kerner, 404 U.S. 519, 520 (1972). However, the liberal construction requirement will not permit a district court to ignore a clear failure to allege facts in his Complaint which set forth a claim that is cognizable under federal law. Weller v. Dep't of Soc. Servs., 901 F.2d 387 (4th Cir. 1990).

---

[1] The Court will address only those claims fairly raised by Plaintiff's Complaint. In this regard, Plaintiff's purported Eighth Amendment cruel and unusual punishment claim arises under the Fourteenth Amendment and will be addressed thereunder.

## III.     DISCUSSION

### A.     ADA

Under Title II of the ADA, "no qualified individual with a disability shall, by reasons of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity." 42 U.S.C. § 12132. The ADA defines "public entity" to include "any State or local government" and "any department, agency, … or other instrumentality of a State." United States v. Georgia, 546 U.S. 151, 126 S.Ct. 877 (2006) (citing 42 U.S.C. § 12131(1)). "[T]his term includes state prisons," id. (citing Pennsylvania Dept. of Corrections v. Yeskey, 524 U.S. 206, 210, 118 S.Ct. 1952 (1998)), and county jails, see Hodge v. Randolph County Jail, 2023 WL 12090473, at *2 (M.D.N.C. Dec. 6, 2023), report and rec. adopted, 2024 WL 5704243 (M.D.N.C. Jan. 19, 2024).

To establish a prima facie case under Title II of the ADA, a plaintiff must show that: (1) he has a disability; (2) he was either excluded from participation in or denied the benefits of some public entity's services, programs, or activities for which he was otherwise qualified; and (3) such exclusion, denial of benefits, or discrimination was by reason of his disability. Miller v. Hinton, 288 Fed. App'x 901, 902 (4th Cir. 2008) (citations omitted). States are obligated to make "reasonable modifications" to enable the disabled person to receive the services or participate in programs or activities. 42 U.S.C. § 12131(2). The duty of reasonable accommodation, however, must also consider whether the institution's actions are related to legitimate penological interests. See Turner v. Safley, 482 U.S. 78, 89, 107 S.Ct. 2254 (1987); Tanney v. Boles, 400 F.Supp.2d 1027, 1050 (E.D. Mich. 2005) (noting that courts have applied Turner to ADA and Rehab Act claims). A plaintiff must also establish an actual injury from any alleged ADA violation. See Rosen v. Montgomery Cty. Md., 121 F.3d 154, 158 (4th Cir. 1997).

The ADA, however, does not provide for individual capacity suits against state officials.

3

See Barnes v. Young, 565 Fed. App'x 272, 273 (4th Cir. 2014) (unpublished) (quoting Garcia v. S.U.N.Y. Health Sciences Ctr., 280 F.3d 98, 107 (2d Cir. 2001) (collecting cases)); see Baird v. Rose, 192 F.3d 462, 472 (4th Cir. 1999) (there is no ADA retaliation claim against defendants in their individual capacities); Moneyhan v. Keller, 563 Fed. App'x 256, 258 (4th Cir. 2014) ("Neither the ADA nor the Rehabilitation Act authorizes suits for monetary damages against Defendants in their individual capacities.") (citation omitted). Such a suit, therefore, may only be brought against a defendant in an official capacity. Id. As such, to the extent Plaintiff intends to bring an individual capacity ADA claim against Defendant Griffin, this claim fails and will be dismissed.

"Although the Fourth Circuit has not addressed this issue in a published opinion, unpublished cases from this circuit, as well as published and unpublished cases from other circuits, indicate that a prisoner may not state a claim under the ADA for a lack of medical treatment." Mondowney v. Baltimore Cnty. Detention Center, No. ELH-17-1538, 2019 WL 3239003, at *7 (D. Md. July 18, 2019) (collecting cases). See, e.g., Miller v. Hinton, 288 Fed. App'x 901, 902-03 (4th Cir. 2008) (affirming dismissal of ADA claim where quadriplegic prisoner failed to show denial of access to colostomy bags and catheters was the result of his disability); Bryant v. Madigan, 84 F.3d 246, 249 (7th Cir. 1996) (concluding that the ADA is not "violated by a prison's simply failing to attend to the medical needs of its disabled prisoners").

Taking Plaintiff's allegations as true and giving him the benefit of every reasonable inference, Plaintiff has nonetheless failed to state a claim under the ADA. Plaintiff has alleged nothing more than the denial of desired medical care for his OUD. He has alleged nothing showing that he was denied the benefit of the Jail's services, programs, or activities for which he was otherwise qualified by reason of his disability. The Court, therefore, will dismiss this claim.

4

B.     **Constitutional Claims**

To state a claim under § 1983, a plaintiff must allege that he was deprived of a right secured by the Constitution or laws of the United States, and that the alleged deprivation was committed by a "person" acting under color of state law.  See 42 U.S.C. § 1983; Am. Mfrs. Mut. Ins. Co. v. Sullivan, 526 U.S. 40, 49-50 (1999); Health & Hosp. Corp. of Marion Cnty. v. Talevski, 599 U.S. 166 (2023).

"[A] pretrial detainee has a right under the Due Process Clause to be free from punishment before his guilt is adjudicated." Tate v. Parks, 791 Fed. App'x 387, 390 (4th Cir. 2019) (citing Bell v. Wolfish, 441 U.S. 520, 535 (1979)). An individual pretrial detainee may raise a substantive due process challenge to his conditions of confinement "where they are so disproportionate or arbitrary that they are not related to legitimate penological objectives and amount to punishment." Id. (citing Williamson v. Stirling, 912 F.3d 154, 174-76 (4th Cir. 2018)). "To prevail on such a claim, a detainee must show that the challenged treatment or conditions were either (1) imposed with an express intent to punish, or (2) not reasonably related to a legitimate nonpunitive objective, in which case an intent to punish may be inferred." Id. (citing Williamson, 912 F.3d at 178).

Taking Plaintiff's allegations as true and giving him the benefit of every reasonable inference, Plaintiff has failed to state a due process claim based on the conditions of his confinement.  He alleges only that he suffered various withdrawal symptoms as a result of the lack of MAT at the Jail.  His allegations do not suggest an express intent to punish or that the absence of MAT at the Jail is not reasonably related to a legitimate nonpunitive objective.  The Court, therefore, will also dismiss this claim.

A pretrial detainee's claim based on deliberate indifference to a serious medical need is also properly brought pursuant to the Fourteenth Amendment. Short v. Hartman, 87 F.4th 593, 611

5

(4th Cir. 2023). To state such a claim, a plaintiff must allege that:

> (1) they had a medical condition or injury that posed a substantial risk of serious harm; (2) the defendant intentionally, knowingly, or recklessly acted or failed to act to appropriately address the risk that the condition posed; (3) the defendant knew or should have known (a) that the detainee had the condition and (b) that the defendant's action or inaction posed an unjustifiably high risk of harm; and (4) as a result, the detainee was harmed.

Id. at 611. Under this standard, "the plaintiff [need not] show that the defendant had actual knowledge of the detainee's serious medical condition and consciously disregarded the risk that their action or failure to act would result in harm." Id. "[I]t is enough that the plaintiff show that the defendant acted or failed to act 'in the face of an unjustifiably high risk of harm that is either known or so obvious that it should be known.'" Id. (quoting Farmer v. Brennan, 511 U.S. 825, 836, 114 S.Ct. 1970 (1994)). It remains, however, insufficient "for the plaintiff to allege that the defendant negligently or accidentally failed to do right by the detainee." Id. at 611-12.

Furthermore, to establish liability under 42 U.S.C. § 1983, a plaintiff "must affirmatively show that the official charged acted personally in the deprivation of [his] rights." Williamson v. Stirling, 912 F.3d 154, 171 (4th Cir. 2018) (cleaned up); see Vinnedge v. Gibbs, 550 F.2d 926, 928 (4th Cir. 1977) (citation omitted).

Taking Plaintiff's allegations as true and giving him the benefit of every reasonable inference, Plaintiff has failed to state an individual capacity Fourteenth Amendment claim against Defendant Griffin based on the denial of MAT for Plaintiff's OUD. That is, Plaintiff allegations do not evince any personal participation by Defendant Griffin in Plaintiff's medical care or any knowledge by Defendant Griffin of Plaintiff's condition or that any action or inaction by Defendant Griffin posed a substantially high risk of harm to the Plaintiff. The Court, therefore, will dismiss this claim.

Plaintiff's claim against Defendant Griffin in his official capacity as Sheriff of Henderson County based on the policy of not offering MAT programs at the Jail to treat Plaintiff's OUD, however, does survive initial review as not clearly frivolous. See Hopper v. McFadden, 2022 WL 5027548, at *3 (W.D.N.C. Oct. 4, 2022) (allowing detainee plaintiff's claim against county sheriff's office based on policy-based denial of colostomy care passed initial review).

Finally, to state an equal protection claim, Plaintiff must allege that he has been treated differently from others with whom he is similarly situated, and that the unequal treatment was the result of intentional or purposeful discrimination. See Morrison v. Garraghty, 239 F.3d 648, 654 (4th Cir. 2001). In doing so, the plaintiff must set forth "specific, non-conclusory factual allegations that establish an improper [discriminatory] motive." Williams v. Hansen, 326 F.3d 569, 584 (4th Cir. 2003) (quoting Trulock v. Freeh, 275 F.3d 391, 405 (4th Cir. 2001)).

Giving Plaintiff the benefit of every reasonable inference and taking his allegations as true, he has nonetheless failed to state an equal protection claim. Plaintiff alleges only that "other similarly situated detainees in North Carolina are offered MAT therapy." [Doc. 1 at 4]. These allegations fail to show that he was being treated differently than similarly situated detainees at the Jail. Rather, his allegations show that all detainees similarly situated to the Plaintiff at the Jail are treated the same. The Court, therefore, will dismiss Plaintiff's equal protection claim.

## IV. CONCLUSION

In sum, the Complaint survives initial review under 28 U.S.C. § 1915A as to Plaintiff's official capacity Fourteenth Amendment due process claim against Defendant Griffin based on the policy-based denial of MAT to treat Plaintiff's OUD. Plaintiff's remaining claims will be dismissed.

**ORDER**

IT IS, THEREFORE, ORDERED that all claims asserted in this matter are hereby **DISMISSED** for failure to state a claim, except for Plaintiff's official capacity Fourteenth Amendment due process claim against Defendant Griffin as further set forth in this Order, which passes initial review.

**IT IS FURTHER ORDERED** that the Clerk is directed to mail one (1) blank summons form to Plaintiff for Plaintiff to fill out and identify Defendant Griffin for service of process and then return the summons to the Court. Plaintiff is required to provide the necessary information for the U.S. Marshal to effectuate service. Once the Court receives the summons from Plaintiff, the Clerk shall then direct the U.S. Marshal to effectuate service upon the Defendant.

**IT IS SO ORDERED**.

Signed: January 7, 2026

Kenneth D. Bell
United States District Judge